# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 26, 2009

Charles R. Fulbruge III
Clerk

No. 09-20024

In Re: LARRY RAY SWEARINGEN

Movant

On Motion for Authorization to File
Successive Petition for Writ of Habeas Corpus in the
United States District Court for the Southern District of Texas

On Motion for Stay of Execution

ORDER AUTHORIZING THE DISTRICT COURT
TO CONSIDER A SUCCESSIVE HABEAS CORPUS PETITION
AND GRANTING A STAY OF EXECUTION

Before JONES, Chief Judge, and WIENER and DeMOSS, Circuit Judges.

PER CURIAM:

Texas inmate Larry Ray Swearingen ("Swearingen"), sentenced to death for the capital murder of Melissa Trotter, seeks a stay of his execution scheduled for January 27, 2009, and authorization to file a successive petition for writ of habeas corpus in the United States District Court for the Southern District of Texas. For the following reasons, we GRANT IN PART AND DENY IN PART the motion and STAY the execution.

## I. Factual & Procedural Background

Swearingen was convicted of capital murder by a jury in Montgomery County, Texas and sentenced to death on July 11, 2000. The jury found that on December 8, 1998, he murdered nineteen-year-old Melissa Trotter by ligature strangulation during the commission or attempted commission of either (1) a kidnaping or (2) an aggravated sexual assault. On direct appeal, the Texas Court of Criminal Appeals (TCCA) affirmed his conviction and sentence on March 26, 2003. Swearingen v. State, 101 S.W.3d 89 (Tex. Crim. App. 2003).

On March 11, 2002, while his direct appeal was still pending, Swearingen filed his first state habeas petition, which raised ten claims. The TCCA adopted the state trial court's factual findings and legal conclusions and denied relief. Ex Parte Swearingen, No. WR-53,613-01 (Tex. Crim. App. May 21, 2003) (online citation unavailable).

On May 21, 2004, Swearingen filed his first federal habeas petition in the United States District Court for the Southern District of Texas. The district court granted the State's summary judgment motion and dismissed the case with prejudice, but it issued a certificate of appealability on Swearingen's sufficiency of the evidence claim under Jackson v. Virginia, 443 U.S. 307 (1979).[1] In his first federal habeas petition, Swearingen did not challenge the sufficiency of the evidence that he murdered Trotter; he only challenged the sufficiency of the evidence that he murdered her during the commission or attempted commission of either a kidnaping or an aggravated sexual assault. This position was consistent with his trial strategy. On July 31, 2006, we affirmed the district court's denial of the Jackson claim. Swearingen v. Quarterman, 192 F. App'x

---

[1] Swearingen raised seven claims in his first federal habeas petition. The district court held that actual and independent state procedural law barred consideration of four unexhausted claims. It denied the remaining three claims on the merits.

300 (5th Cir. 2006) (per curiam) (unpublished), cert. denied 549 U.S. 1216 (2007).[2]

On January 22, 2007, Swearingen filed his first successive state habeas petition. After evaluating whether the claims complied with Article 11.071, Section 5 of the Texas Code of Criminal Procedure, the TCCA remanded six claims to the state trial court. Ex Parte Swearingen, No. WR-53,613-04 (Tex. Crim. App. Jan. 23, 2007) (online citation unavailable). The TCCA later adopted the state trial court's factual findings and legal conclusions regarding those six claims and denied relief. Ex Parte Swearingen, No. WR-53,613-04, 2008 WL 152720 (Tex. Crim. App. Jan. 16, 2008).

On January 16, 2008, Swearingen filed his second successive state habeas petition. After evaluating whether the claims complied with Article 11.071, Section 5 of the Texas Code of Criminal Procedure, the TCCA dismissed four claims as an abuse of the writ and remanded two claims to the state trial court. Ex Parte Swearingen, No. WR-53,613-05, 2008 WL 650306 (Tex. Crim. App. March 5, 2008). The TCCA later adopted the state trial court's factual findings and legal conclusions regarding those two claims and denied relief. Ex Parte Swearingen, No. WR-53,613-05, 2008 WL 5245348 (Tex. Crim. App. Dec. 17,

---

[2] In this opinion, we explicitly warned Swearingen's counsel to avoid the form of timing gamesmanship we now face:

> We note also that at various times in his briefings Petitioner states that he intends in the future to raise a claim based on actual innocence. If so, Petitioner must file his claim promptly or run the risk of having that claim deemed dilatory and therefore rejected. Such a dilatory filing could also raise the issue of bad faith on the part of Petitioner's attorneys and lead to the imposition of sanctions.

Swearingen, 192 F. App'x at 300 n.2. The late filing of this motion demonstrates disrespect for this court and for Swearingen's life; consequently, Swearingen's counsel are ordered to show cause within 7 days from the date hereof as to why this petition could not have been filed before January 20, 2009 in light of the dispositive order of the TCCA dated December 17, 2008.

We commend the State on the quality of its response, particularly given the extremely limited time that Swearingen's counsel's actions allowed us to provide.

2008), pet. for cert. filed (U.S. Jan. 14, 2009) (No. 08-8202). On January 14, 2009, Swearingen filed a petition for writ of certiorari regarding the TCCA's denial of the second successive state habeas petition, and he sought a stay of execution.

On January 20, 2009, Swearingen filed his motion for leave to file a second federal habeas petition with this court. He asserts the following claims:[3]

(1)    In violation of Herrera v. Collins, 506 U.S. 390 (1993), the State seeks to execute Swearingen when he is actually innocent of capital murder based on newly discovered evidence.

(2)    In violation of Herrera v. Collins, 506 U.S. 390 (1993), the State seeks to execute Swearingen when he is actually innocent of kidnaping and aggravated sexual assault based on newly discovered evidence.

(3)    In violation of Strickland v. Washington, 466 U.S. 668 (1984), Swearingen's trial counsel failed to effectively cross-examine Dr. Joye Carter and failed to develop histological,[4] pathological, and entomological evidence regarding when Trotter's body was left in the forest.

(4)    In violation of Giglio v. United States, 405 U.S. 150 (1972), the State sponsored false and misleading forensic testimony regarding when Trotter's body was left in the forest.

(5)    In violation of Brady v. Maryland, 373 U.S. 83 (1963), the State withheld material, exculpatory entomological evidence collected at the crime scene.

---

[3] The claims identified in Swearingen's motion to file a successive federal habeas petition and the attached proposed petition are not consistent. We have included all the constitutional claims that he raised in either document. On January 23, 2009, Swearingen filed a supplemental brief seeking authorization to file actual innocence and ineffective assistance of counsel claims based on newly discovered histological evidence.

[4] On January 20 and 21, 2009, Dr. Lloyd White reviewed slides prepared from a paraffin block that contained Trotter's body tissue. Swearingen claims that he did not discover this histological evidence sooner because the Harris County Medical Examiner's office repeatedly stated that all samples from the autopsy had been discarded. According to Swearingen, the medical examiner did not disclose that it had the paraffin block until January 15, 2009.

(6)    In violation of Brady v. Maryland, 373 U.S. 83 (1963), the State withheld material, exculpatory evidence that another man, not Swearingen, had made serious, credible threats on Trotter's life near the time of her disappearance.

(7)    In violation of the Sixth and Fourteenth Amendments, Swearingen was convicted of capital murder under instructions that did not require the jury to agree on one of four alternative theories: attempted aggravated sexual assault, aggravated sexual assault, attempted kidnaping, or kidnaping.

## II. Analysis

We do not address the merits of Swearingen's claims and only consider whether to excuse his procedural default of failing to raise them in his first federal habeas petition. This court may authorize a successive habeas petition only if the application "makes a prima facie showing that the application satisfies the requirements of this subsection." 28 U.S.C. § 2244(b)(3)(C). The relevant portion of the subsection requires that a claim be dismissed unless:

> (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2)(B).

Section 2244 establishes two independent gates through which the motion to file a successive petition must pass before the merits will be addressed.[5] First, this court must determine whether the motion makes a prima facie showing that it can meet the requirements of § 2244(b)(2). This requires "a sufficient showing of possible merit to warrant a fuller exploration by the district court," and

---

[5] State court findings and state procedural bars do not affect whether Swearingen may file his habeas petition but will affect consideration of the merits of his claims, if they are reached. In re Wilson, 442 F.3d 872, 878 (5th Cir. 2006).

permission will be granted when it "appears reasonably likely that the application satisfies the stringent requirement for the filing of a second or successive petition." In re Morris, 328 F.3d 739, 740 (5th Cir. 2003) (quoting Bennett v. United States, 119 F.3d 468, 469–70 (7th Cir. 1997)). Second, before addressing the merits of the successive petition, the district court must independently determine whether the petition actually satisfies the stringent § 2244(b)(2) requirements. Id. at 741.

The TCCA has detailed the facts of this case. See Swearingen, 101 S.W.3d at 92–95. In brief, Melissa Trotter disappeared on December 8, 1998. Her body was found in the Sam Houston National Forest on January 2, 1999. Swearingen had been in jail since December 11, 1998. The claims he seeks to raise in his successive petition primarily relate to forensic evidence that allegedly proves that Trotter's body was left in the forest after his arrest.[6]

Swearingen raises two claims of actual innocence. The Fifth Circuit does not recognize freestanding claims of actual innocence on federal habeas review. See Graves v. Cockrell, 351 F.3d 143, 151 (5th Cir. 2003) (collecting cases). This panel cannot overturn the decision of an earlier panel. Teague v. City of Flower Mound, Tex., 179 F.3d 377, 383 (5th Cir. 1999).

---

[6] We note the inconsistencies in the forensic evidence presented by Swearingen. Dr. Carter's affidavit describes "marked decomposition of the head and neck region" and finds that the body was exposed in the woods "within fourteen days of discovery." Dr. G. M. Larken suggests that the body was in the woods and deceased for 3–4 days. Dr. Luis Sanchez concludes that the body was likely in the field for 10–15 days but was "some place else before that." Dr. James Arends, an entomologist, testified that the body was "stored someplace cold" ("frozen") before being placed in woods based on the different decomposition from one end of the body to another. Finally, Dr. White analyzed tissues that he concluded "are of an individual that has been dead no more than two or three days." Obviously, although each expert opines that the body was not placed in the woods on December 8, 1998, the differences undermine the credibility of their conclusions.

The State presented entomological evidence at evidentiary hearings indicating that the body was colonized by the fly Cynomyopsis Cadavarina, a secondary colonizer, on December 18, 1998. Nor does any expert testimony weaken the link between the victim's stomach contents and the meal she ate with Swearingen on December 8, 1998.

Swearingen asserts that the State sponsored the false or misleading testimony of Dr. Carter, the Harris County Medical Examiner who testified at trial for the State as to the date of death, in violation of his due process rights as set forth in Giglio v. United States, 405 U.S. 150 (1972). The factual predicate for this claim is an October 31, 2007 affidavit that casts some doubt on her testimony as to the date of death. At trial, Dr. Carter testified that Trotter's body had been left in the forest for approximately twenty-five days, which was consistent with the State's theory that Swearingen murdered Trotter on December 8, 1998, and left her body in the forest. In her affidavit, Dr. Carter does not address the correctness of her original testimony based on decomposition and fungal growth, but states that if she had been provided certain additional data, she would have testified that the findings of her autopsy "are consistent with a date of exposure in the Sam Houston National Forest within fourteen days of discovery, and incompatible with exposure for a longer period of time." Swearingen has made a prima facie showing that this affidavit could not have been discovered previously with the exercise of due diligence. § 2244(b)(2)(B)(i). Unlike his other claims, this claim rests not on the correctness of her testimony (which could have been disputed at any time) but on the State's interactions with its witness, which could not be known before her affidavit. We assume the merits of Swearingen's asserted constitutional error at this stage, and given the importance of Dr. Carter's expert testimony to the State's case, we find that Swearingen has made a prima facie showing that but for the alleged constitutional error of the State sponsoring the false testimony of Dr. Carter, no reasonable juror could find guilt beyond a reasonable doubt. § 2244(b)(2)(B)(ii).

Swearingen also raises several Strickland claims, two of which satisfy the prima facie showing required by § 2244(b)(2)(B). First, Swearingen alleges that his trial counsel performed a constitutionally deficient cross-examination of Dr.

Carter. Like his Giglio claim, this Strickland claim is based in part on Dr. Carter's affidavit. As discussed above, this claim should be permitted to proceed. Second, Swearingen alleges that his trial counsel failed to develop histological evidence involving a paraffin block that contained Trotter's body tissue. Because Swearingen's expert, Dr. White, was unable to analyze this evidence until January 15, 2009, the factual predicate for this claim could not have been previously discovered with the exercise of due diligence. § 2244(b)(2)(B)(i). Swearingen has made a prima facie showing that but for the alleged constitutional error of his trial counsel's failure to develop this histological evidence, no reasonable juror could find guilt beyond a reasonable doubt. § 2244(b)(2)(B)(ii). Swearingen's remaining Strickland claims fail to satisfy the criteria of § 2244(b)(2)(B).[7]

The factual predicates for Swearingen's remaining claims were either known at the time of trial or, with the exercise of diligence, could have been discovered in time for presentation in his first federal habeas petition.[8] These claims therefore fail to make a prima facie showing of satisfying § 2244(b)(2)(B) and may not be presented in a successive habeas petition.

Accordingly, we authorize Swearing to file a successive habeas corpus petition with the district court limited to: (1) Giglio violations in the State's

---

[7] Swearingen claims that his trial counsel's failure to develop entomological and pathological evidence was constitutionally deficient; however, the factual predicate for both of these Strickland claims could have been previously discovered with the exercise of due diligence.

[8] Among his other claims, Swearingen asserts that the State violated Brady by withholding exculpatory evidence that another man threatened Trotter. In addition to being discoverable with due diligence, in light of the strong circumstantial case against Swearingen and the cumulative nature of the evidence, this claim fails to make a prima facie showing that he will be able to establish by clear and convincing evidence that, but for the alleged concealment of this statement, no reasonable factfinder would have found the applicant guilty of the underlying offense. This claim thus fails to meet either prong of § 2244(b)(2)(B).

presentation of Dr. Carter's testimony; and (2) Strickland violations in trial counsel's cross-examination of Dr. Carter, and his failure to develop histological evidence. We reiterate that this grant is tentative in that the district court must dismiss the motion that we have allowed the applicant to file, without reaching the merits, if the court finds that the movant has not satisfied the § 2244(b)(2) requirements for the filing of such a motion. In re Morris, 328 F.3d at 739 (quoting Reyes-Requena v. United States, 243 F.3d 893, 899 (5th Cir. 2001)).

We GRANT the motion for a stay of execution. We GRANT IN PART AND DENY IN PART the motion to file a successive petition for writ of habeas corpus and ORDER counsel to show cause.

JACQUES L. WIENER, JR., Circuit Judge, specially concurring:

Although my concurrence in the foregoing opinion makes it unanimous, I write separately to address the elephant that I perceive in the corner of this room: actual innocence. Consistently repeating the mantra that, to date, the Supreme Court of the United States has never expressly recognized actual innocence as a basis for habeas corpus relief in a death penalty case, this court has uniformly rejected standalone claims of actual innocence as a constitutional ground for prohibiting imposition of the death penalty.[1] The Supreme Court has, however, made statements in dicta which at least strongly signal that, under the right circumstances, it might add those capital defendants who are actually innocent to the list of persons who — like the insane,[2] the mentally retarded,[3] and the very young[4] — are constitutionally ineligible for the death penalty.[5]

I conceive the real possibility that the district court to which we return this case today could view the newly discovered medical expert reports as clear and convincing evidence that the victim in this case could not possibly have been killed by the defendant, yet find it impossible to force the actual-innocence camel

---

[1] See, e.g., Graves v. Cockrell, 351 F.3d 143, 151 (5th Cir. 2003) (citing cases).

[2] See Ford v. Wainwright, 477 U.S. 399, 409–10 (1986).

[3] See Atkins v. Virginia, 536 U.S. 304, 321 (2002).

[4] See Roper v. Simmons, 543 U.S. 551, 568 (2005) (holding that imposition of the death penalty on juvenile offenders under eighteen violates the Eighth Amendment).

[5] Herrera v. Collins, 506 U.S. 390, 417 (1993) ("We may assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of "actual innocence" made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim."); see House v. Bell, 547 U.S. 518, 554–55 (2006) (emphasizing that Herrera "left open" the hypothetical possibility of a freestanding actual innocence claim); see also Herrera, 506 U.S. at 419 (O'Connor, J., concurring) ("I cannot disagree with the fundamental legal principle that executing the innocent is inconsistent with the Constitution."); David v. Hall, 318 F.3d 343, 347–48 (1st Cir. 2003) ("The actual innocence rubric . . . has been firmly disallowed by the Supreme Court as an independent ground of habeas relief, save (possibly) in extraordinary circumstances in a capital case.").

through the eye of either the Giglio or the Strickland needle, and thus have no choice but to deny habeas relief to an actually innocent person. Should that prove to be so, this might be the very case for this court en banc — or the U.S. Supreme Court if we should demur — to recognize actual innocence as a ground for federal habeas relief.[6] To me, this question is a brooding omnipresence in capital habeas jurisprudence that has been left unanswered for too long.

---

[6] The Second Circuit has noted the possibility that — in addition to the obvious Eighth Amendment concerns — the continued incarceration of an innocent person raises an "open and significant due process question." See Triestman v. United States, 124 F.3d 361, 379 (2d Cir. 1997). In that case, Judge Calabresi said:

> The Supreme Court has stated that a procedural limitation is not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. Concern about the injustice that results from the conviction of an innocent person has long been at the core of our criminal justice system. It is certainly arguable, therefore, that the continued imprisonment of an actually innocent person would violate just such a fundamental principle.

Id. (internal quotation marks and citations omitted). Although, the Second Circuit did not restrict its analysis to the capital context, the Due Process issue only magnifies if we consider the execution of an actually innocent person.

11