

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-82,102-01

### EX PARTE CURTIS FOURNIER, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### FROM CAUSE NO. 1151921-A IN THE 351ST DISTRICT COURT
### HARRIS COUNTY

## NO. WR-82,103-01

### EX PARTE CHRISTOPHER DOWDEN, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### FROM CAUSE NO. 1300886-A IN THE 337TH DISTRICT COURT
### HARRIS COUNTY

KEASLER, J., delivered the opinion of the Court, in which MEYERS, HERVEY, RICHARDSON, and NEWELL, JJ., join. ALCALA, J., filed a concurring opinion. YEARY, J, filed a dissenting opinion, in which KELLER, P.J., joined. JOHNSON, J., concurred.

## O P I N I O N

After being convicted and sentenced for online solicitation of a minor, Curtis Fournier

and Christopher Dowden filed applications for a writ of habeas corpus. In addition to

seeking relief based on this Court's opinion holding the applicable statute unconstitutionally overbroad, Applicants also seek relief under an actual innocence theory. Holding that Applicants do not present true actual innocence claims, we conclude they are not entitled to actual innocence relief. However, consistent with precedents granting relief under an unconstitutional statute theory, we set aside Applicants' judgments.

Fournier and Dowden both pleaded guilty to the offense of online solicitation of a minor under Texas Penal Code § 33.021(b)[1] and were sentenced to terms of confinement in 2008 and 2011, respectively. In 2013, this Court in *Ex parte Lo* held § 33.021(b) to be unconstitutionally broad.[2] Although the State had a compelling interest in protecting children from sexual predators, § 33.021(b) was not narrowly drawn "because there are narrower means of achieving the State interests advanced here, at least some of which are already covered by other statutes."[3] Section 33.021(b)'s constitutional infirmity was found in the Legislature's drafting. The Court did not necessarily hold that Lo's conduct was

---

[1] TEX. PENAL CODE § 33.021(b) (West 2012) ("A person who is 17 years of age or older commits an offense if, with the intent to arouse or gratify the sexual desire of any person, the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, intentionally:

(1) communicates in a sexually explicit manner with a minor; or

(2) distributes sexually explicit material to a minor.").

[2] 424 S.W.3d 10, 19 (Tex. Crim. App. 2013).

[3] *Id.* at 24.

constitutionally protected.

In their respective applications, Applicants request habeas corpus relief under *Lo* and under the theory that, because the statute is unconstitutional, they are "actually innocent." There is no disagreement among the parties that Applicants are entitled to have their judgments set aside under *Lo*.[4] We agree. The undecided issue is whether *Lo* entitles Applicants to relief under an "actual innocence" theory. We filed and set their applications to answer this question.

## Actual Innocence in the Texas Courts

Texas's actual innocence jurisprudence is heavily borrowed from federal law, but its application has been substantially modified. In *Herrera v. Collins*, by way of a federal habeas corpus petition, Herrera sought to present evidence that his brother committed the capital murder for which he was convicted.[5] He claimed that he was "actually innocent" of the capital murder and that the prohibition of cruel and unusual punishment and the Fourteenth Amendment's due process guarantee forbade his execution for the offense.[6] The United States Supreme Court addressed the use of actual innocence as a way to avoid the bar of subsequent federal habeas petitions. Although a federal petitioner may have his federal constitutional claim considered on the merits if he "supplements his constitutional claim with

---

[4]  *See Ex parte Chance*, 439 S.W.3d 918 (Tex. Crim. App. 2014).

[5]  *Herrera v. Collins*, 506 U.S. 390, 393–94 (1993).

[6]  *Id.* at 393.

a colorable showing of factual innocence," "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."[7] The Court never held that factual innocence is eligible as a freestanding claim for relief.[8] For the sake of argument, the Court assumed that it did and went on to hold that Herrera could not satisfy the extraordinarily high showing required.[9]

Taking the concept of actual innocence from the United States Supreme Court's opinion in *Herrera*, this Court in *State ex rel. Holmes v. Honorable Court of Appeals for the Third District* first declared that the execution of an innocent person would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[10] The *Holmes* Court adopted as persuasive *Herrera*'s passage in assuming a freestanding constitutional right: "We may assume for the sake of argument in deciding this case . . . a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim."[11] *Holmes* held that only when an applicant can

---

[7] *Id.* at 404.

[8] *Id.* at 404–405. *See House v. Bell*, 547 U.S. 518, 554–55 (2006).

[9] *Herrera*, 506 U.S. at 417–20.

[10] *State ex rel. Holmes v. Honorable Court of Appeals for the Third District*, 885 S.W.2d 389, 397 (Tex. Crim. App. 1994).

[11] *Id.* (citing *Herrera*, 506 U.S. at 417).

show that no rational trier of fact could find applicant guilty beyond a reasonable doubt in light of newly discovered evidence is an applicant entitled to relief on a factual innocence claim.[12]

Two years after *Holmes*, the Supreme Court's "actual innocence" assumption[13] was firmly established into Texas habeas corpus law as a path to habeas relief. This Court's opinion in *Ex parte Elizondo* extended the potential due process violation from death-penalty cases to every case involving incarceration.[14] *Elizondo* also established an applicant's burden to obtain actual-innocence relief: "The petitioner must show *by clear and convincing evidence* that no reasonable juror would have convicted him in light of the new evidence."[15] Because punishment of an innocent man violates the Due Process Clause of the United States Constitution, an applicant is entitled to relief if he can "prove by clear and convincing evidence to this Court, in the exercise of its habeas corpus jurisdiction, that a jury would

---

[12] *Id.* at 398; *Ex parte Franklin*, 72 S.W.3d 671, 676 (Tex. Crim. App. 2002).

[13] *See Ex parte Elizondo*, 947 S.W.2d 202, 206–207 (Tex. Crim. App. 1996) ("Most justices of the Supreme Court, including Justice White, refused to hold that Herrera's claim of actual innocence was independently cognizable in a federal habeas corpus proceeding. Indeed, they specifically declined to decide that question because the facts plainly showed Herrera to be guilty of the crime under any standard. The Court simply reasoned that, even if it were unconstitutional to execute an innocent person, it would not be unconstitutional to execute Herrera since he was not innocent.").

[14] *Id.* at 204.

[15] *Id.* at 209 (emphasis in original).

acquit him based on his newly discovered evidence."[16] *Elizondo*'s statement was clear: To be eligible for actual innocence relief, an applicant must "unquestionably establish" his factual innocence through newly discovered evidence.[17]

Subsequent precedent reaffirmed *Elizondo*'s fact- and conduct-centric notions of actual innocence. In *Ex parte Rich*, this Court rejected the characterization of Rich's "actual innocence" claim that an improper enhancement rendered him actually innocent as to the improper enhancement paragraph.[18] Although we granted Rich relief because his sentence was illegal, this Court stated that it is incorrect to treat Rich's claim as involving actual innocence. The Court so held because there was no evidence that Rich was innocent of the offense used to enhance his punishment, and the mischaracterization of the offense used for enhancement did not make Rich innocent of the primary offense for which he was charged.[19] Further, Rich's claims did not involve the "traditional hallmarks of actual innocence claims—newly discovered evidence showing that the defendant is being wrongfully imprisoned for a crime that he did not commit."[20]

---

[16] *Id.*

[17] *Id.*

[18] *Ex parte Rich*, 194 S.W.3d 508, 511 (Tex. Crim. App. 2006).

[19] *Id.* at 515.

[20] *Id.*

Our opinion in *Wilson v. State*[21] elaborated on *Rich*'s holding. In a nearly unanimous opinion written by Judge Johnson, the Court stated, "We hold that the term 'actual innocence' shall apply, in Texas state cases, only in circumstances in which an accused did not, in fact, commit the charged offense or any of the lesser-included offenses."[22] Looking back to its federal origins, the *Wilson* Court clarified that a bare actual innocence claim does not countenance "legal innocence"—the notion that, despite committing the alleged conduct, the applicant is nonetheless not guilty.[23]

The *Wilson* clarification was at the center of our recent opinion in *Ex parte Mable*, in which we denied an applicant's actual innocence claim when newly discovered forensic testing revealed that the substances forming the basis of Mable's drug possession conviction contained no illicit substances.[24] Although newly discovered evidence and facts were pleaded, we again looked to the applicant's conduct: "In this case, the applicant pleaded guilty to possession of a controlled substance. Therefore, it is possible that he intended to possess a controlled substance (which is not alone an offense) or that he attempted to possess

---

[21] *State v. Wilson*, 324 S.W.3d 595 (Tex. Crim. App. 2010).

[22] *Id.* at 598.

[23] *See id.* at 598–99. *But see Ex parte Sparks*, 206 S.W.3d 680, 683 (Tex. Crim. App. 2006).

[24] *Ex parte Mable* 443 S.W.3d 129, 130–31 (Tex. Crim. App. 2014).

a controlled substance (which is a lesser included offenses of possession)."[25]  In his application, Mable did not contest that newly discovered evidence proved that he did not commit or intend to commit a significant portion of the charged conduct, specifically the possession element.

"A prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime."[26]  An actual innocence claim must be accompanied by new "affirmative evidence of the applicant's innocence."[27] In the past we have evaluated the merits of actual innocence claims supported by new evidence in the form of witness recantations,[28] scientific testing like DNA,[29] and new expert testimony.[30] Applicants' requests for relief on a bare actual innocence basis do not allege any evidence

---

[25]  *Id.*

[26]  *Sawyer v. Whitley*, 505 U.S. 333, 340 (1992).

[27]  *Ex parte Franklin*, 72 S.W.3d at 678.

[28]  *See, e.g., Ex parte Navarijo*, 433 S.W.3d 558, 564 (Tex. Crim. App. 2014) (newly discovered recantation from sexual assault victim); *Ex parte Thompson*, 153 S.W.3d 416, 420–21 (Tex. Crim. App. 2005) (granting relief on actual innocence as a result of sexual assault victim's recantation); *Ex parte Tuley*, 109 S.W.3d 388, 395–97 (Tex. Crim. App. 2002) (victim recantation).

[29]  *See, e.g., Ex parte Holloway*, 413 S.W.3d 95, 96–97 (Tex. Crim. App. 2013) (DNA testing on weapon excluded applicant).

[30]  *See, e.g., Ex parte Jimenez*, 364 S.W.3d 866, 874 (Tex. Crim. App. 2012) (four experts' testimony contesting State's theory that defendant committed the conduct causing death); *Ex parte Spencer*, 337 S.W.3d 869, 878–80 (Tex. Crim. App. 2011) (forensic optometrist's testimony that witnesses could not have seen what they testified to at trial).

establishing that had it been presented at trial, Applicants would not have been found guilty of the offense they were convicted of. Applicants do not contest that they engaged in the conduct for which they were convicted. The conduct on which the criminal prosecution was based still exists as a matter of historical fact. Instead, Applicants' contentions rest solely on a legal basis—the statute under which they were convicted is unconstitutionally broad in violation of the First Amendment. This claim is much different than pointing to new evidence supporting an argument that Applicants did not commit the conduct for which they were convicted. *Lo*, as matter of law, removed the criminal sanctions once affixed to Applicants' conduct because the statute criminalizing it was unconstitutionally drafted. *Lo* was decided on the heightened standard we use to measure a statute's language that restricts free speech. Our opinion in *Lo* is irrelevant to whether Applicants' conduct was in fact committed. We conclude that Applicants do not assert true claims of actual innocence for which relief may be granted; they are decidedly different.

By relying on the statute's overbreadth as a constitutional impediment to their convictions, Applicants' claims, if anything, more closely resemble *Schlup v. Delo*[31] claims made in federal court or claims made in Texas pursuant to Code of Criminal Procedure Article 11.07, § 4(a)(2) or Article 11.071, § 5(a)(2)[32] as a procedural vehicle to get merits

---

[31] 513 U.S. 298 (1995).

[32] TEX. CODE CRIM. PROC. arts. 11.07, § 4(a)(2), 11.071, § 5(a)(2) (stating that a court may not consider a subsequent writ application unless the application contains specific facts establishing that "by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty

review for procedurally barred claims. But Applicants' claims are not found in subsequent applications; these are Applicants' initial writs.

In *Schlup*, the United States Supreme Court held that Schlup could assert a procedural form of "actual innocence" to overcome the procedural bar against raising subsequent habeas corpus claims in federal court.[33] The Court made clear that Schlup's "constitutional claims are based not on his innocence, but rather on his contention that the ineffectiveness of his counsel, . . . and the withholding of evidence by the prosecution, . . . denied him the full panoply of protections afforded to criminal defendants by the Constitution."[34] Schlup's claim of actual innocence, the Court noted, was offered only to bring him within the "narrow class of cases . . . implicating a fundamental miscarriage of justice," a long-standing exception to the federal procedural bar to subsequent habeas claims.[35] The Court contrasted Schlup's actual innocence claim from Herrera's: "[Herrera] advanced his claim of innocence to support a novel substantive constitutional claim, namely, that the execution of an innocent person would violate the Eighth Amendment."[36]

Of course, *Schlup*'s "actual innocence" gateway for review of federally barred claims

---

beyond a reasonable doubt.").

[33] *Schlup*, 513 U.S. at 326–29

[34] *Id.* at 314 (in-text citations omitted).

[35] *Id.* (citing *McClesky v. Zant*, 499 U.S. 467, 494 (1991)).

[36] *Id.*

serves only as a historical footnote to Texas's abuse-of-the-writ statutes found in Article 11.07, § 4(a)(2) and Article 11.071, § 5(a)(2), as those statutes appear to have been patterned after it.[37] *Schlup* does not apply in Texas,[38] and coincidently, like *Herrera*, does not provide an avenue for relief in federal courts either.[39] Because Applicants' claims are made in initial applications, we are not faced with procedurally barred claims, nor the obligation to measure them against our subsequent-application statutes. Applicants need not overcome any procedural hurdles, and their *Lo* claims may be addressed outright.

Applicants refer us to precedents holding that federal petitioners are "actually innocent" when the statute under which they were convicted is declared unconstitutional. Because they all deal with actual innocence as a way to avoid procedural default under federal law, we find them inapplicable. In *Bousley v. United States*, petitioner Bousley challenged his conviction of using a firearm in violation of 18 U.S.C. § 924(c)(1) claiming that his plea was involuntary because he was misinformed of the offense's elements.[40] Bousley's argument relied on the Supreme Court's interpretation of the word "use" in the

---

[37] *See Ex parte Blue*, 230 S.W.3d 151, 158, 160 (Tex. Crim. App. 2007).

[38] *Ex parte Villegas*, 415 S.W.3d 885, 887–88 (Tex. Crim. App. 2013) (Price, J., concurring).

[39] *See, e.g., House*, 547 U.S. at 555; *In re Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009); *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004); *Johnson v. Bett*, 349 F.3d 1030, 1038 (7th Cir. 2003); *Rouse v. Lee*, 339 F.3d 238, 255 (4th Cir. 2003); *David v. Hall*, 318 F.3d 343, 347–48 (1st Cir. 2003); *Burton v. Dormire*, 295 F.3d 839, 848 (8th Cir. 2002); *LaFevers v. Gibson*, 238 F.3d 1263, 1265 n.4 (10th Cir. 2001).

[40] *Bousley v. United States*, 523 U.S. 614, 617–18 (1998).

statute five years after his conviction.[41]  The Court found Bousley's claim procedurally defaulted, and held that if Bousley could establish "that the constitutional error in his plea colloquy 'has probably resulted in the conviction of one who is actually innocent,'" only then could his claim be entertained.[42] The Court did not, as Applicants seems to suggest, find that Bousley was actually innocent under *Schlup* or that his plea was invalid; the Court remanded to permit Bousley the opportunity to make that showing.[43]  *Bousley* stands for the unremarkable principle that actual innocence, if proved, can serve as a claim to overcome the federal courts' bar on successive habeas petitions.

Applicants' citations to other federal precedent are equally unpersuasive.  Applicants rely heavily on *Alexander v. Johnson*, a magistrate's opinion holding that because petitioner's parole was revoked on the grounds of a facially unconstitutional statute, he "is by necessity actually innocent of a violation of law."[44]  In so holding, the judge purportedly applied Fifth Circuit and Supreme Court precedent.  In granting relief, the magistrate's opinion made no mention of a bare actual innocence claim and did not grant relief on that basis.  The inclusion of the term "actually innocent" is found in its discussion of whether equitable tolling permitted the applicant to file his habeas petition outside the federal statute's one-year statute

---

[41]  *Id.* at 616.  *See Bailey v. United States*, 516 U.S. 137, 144 (1995) (holding that "use" requires the Government to show "active employment of the firearm.").

[42]  *Bousley*, 523 U.S. at 623.

[43]  *Id.* at 623–24.

[44]  *Alexander v. Johnson*, 217 F. Supp.2d 780, 792 (S.D. Tex. 2001).

of limitations.[45]  Like in *Bousley*, the magistrate's opinion, and the authority it relies upon, is only relevant to successive habeas petitions in federal court.

In *Reyes-Requena v. United States*, the Fifth Circuit also used the term actual innocence, but did so in the context of whether Reyes-Requena's claim properly fell within 18 U.S.C. § 2255(h)'s "savings clause."[46]  *Reyes-Requena* spoke only in terms of how a particular claim may be pursued after an initial habeas petition and did not grant habeas relief.  Instead, the court remanded the matter to the district court to determine the merits of Reyes-Requena's claim.[47]  Citing to *Hiett v. United States*[48] and *Davis v. United States*[49] also does not help Applicants' request for actual innocence relief.  *Hiett* involved a direct appeal of a federal conviction under a statute that criminalized using the mail to solicit business in connection with securing a divorce in a foreign country.[50]  The Fifth Circuit found the statute

---

[45]  *Id.* at 791–92.

[46]  *Reyes-Requena v. United States*, 243 F.3d 893, 904–905 (5th Cir. 2001).  *See* 18 U.S.C. § 2255(h) (2000) (permitting second or successive motions only if the motion contains "(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.").

[47]  *Reyes-Requena*, 243 F.3d at 904–906.

[48]  415 F.2d 664, 666 (5th Cir. 1969).

[49]  417 U.S. 333, 346 (1974).

[50]  *Hiett*, 415 F.2d at 665.

unconstitutionally vague and reversed the conviction.[51] *Davis* involved a federal habeas petition, but "[t]he sole issue before the Court . . . [was] the propriety of the Court of Appeals' judgment that a change in the law of that Circuit after the petitioner's conviction may not be successfully asserted by him in a § 2255 proceeding."[52] While it expressed no view on the merits of the claim, the Court held that Davis could proceed under § 2255 with his claim that his underlying conduct was not criminal because the administrative order that criminalized his conduct was unconstitutional.[53] This holding is inapplicable to Applicants' actual innocence claims.

## Relief under *Ex parte Lo*

Although we find against Applicants in their claims for actual innocence relief, Applicants are entitled to relief under *Lo* and our subsequent decision in *Ex parte Chance*.[54] In a short *per curiam* opinion, we granted Chance relief based on our judgment in *Lo* despite Chance's failure to contest the statute's constitutionality at trial or on appeal.[55] Consistent

---

[51] *Id.* at 673.

[52] *Davis*, 417 U.S. 341 (1974).

[53] *Id.* at 346–47 ("If this contention is well taken, then Davis' conviction and punishment are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'present(s) exceptional circumstances' that justify collateral relief under § 2255.").

[54] 439 S.W.3d 918 (Tex. Crim. App. 2014). *Accord Reyes v. State*, 753 S.W.2d 382, 383 (Tex. Crim. App. 1988) (holding that an unconstitutional statute is void from its inception).

[55] *See generally Chance*, 439 S.W.3d at 918.

with *Chance*, we set aside Fournier's and Dowden's judgments of conviction in Cause Numbers 1151921 and 1300886, respectively, and remand those causes to the respective trial courts to dismiss the indictments.


DELIVERED: October 28, 2015

PUBLISH